UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN MASCHECK and SHELLY MASCHECK, Individually and as Representatives of the ESTATE OF JOHNATHON DAVID MASCHECK<br>    Plaintiffs,<br><br>v.<br><br>JIM WELLS COUNTY, TEXAS,<br>    Defendant. | §§§§§§§§§§§ | C.A. NO. C-05-291 |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

On July 17, 2006, plaintiffs John Mascheck and Shelly Mascheck and defendant Jim Wells County, Texas appeared for trial.  After plaintiffs called their witness and rested their case, defendant moved for judgment as a matter of law.  Fed. R. Civ. P. 50(a).  This Court may render a judgment as a matter of law only when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. P. 50(a).  In granting a judgment as a matter of law, the Court must "review all of the evidence in the record . . . [and] . . . draw all reasonable inferences in favor of the nonmoving party."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000).

### I.   ANALYSIS

*A.   County Liability Under 42 U.S.C. § 1983*

Plaintiffs John and Shelly Mascheck bring suit against Jim Wells County under 42

U.S.C. § 1983, claiming that the county violated their son Johnathon David Mascheck's right to due process under the Fourteenth Amendment of the Constitution of the United States by failing to train its employees to recognize and not ignore the obvious medical needs of detainees with known demonstrable, and serious mental disorders. To succeed under § 1983, plaintiffs must show "(1) a deprivation of rights secured by the constitution, (2) by a person acting under color of state law." *Evans v. City of Marlin, et al.*, 986 F.2d 104, 107 (5th Cir. 1993). More specifically, Plaintiffs must prove that the jailers employed by Jim Wells County were deliberately indifferent to Johnathon Mascheck's obviously serious medical needs in violation of his right as a pretrial detainee to adequate protection from his known suicidal tendencies. *See id.* (citing *Rhyne v. Henderson County, et al.*, 973 F.2d 386, 391 (5th Cir. 1992); *Burns v. City of Galveston*, 905 F.2d 100, 103 (5th Cir. 1990) (citing *Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182 (5th Cir. 1986)); *Bell v. Wolfish*, 99 S.Ct. 1861 (1979). Deliberate indifference is difficult to prove:

> For an office to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . . . To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of training is obvious and obviously likely to result in a constitutional violation.

*Id*. (citations and quotations omitted). Mere negligence on the part of a prison official is never enough. *Hare, et al. v. City of Corinth, et al.*, 74 F.3d 633, 646 (5th Cir. 1996).

Because a local county government cannot be held vicariously liable for the actions of its employees under § 1983, plaintiffs must also show that "the execution of a local government's policy or custom cause[d] the injury" to Jonathon. *Baker, et al. v. Putnal, et al.*, 75 F.3d 190, 200 (5th Cir. 1996). Plaintiffs allege that Jonathon Mascheck's death was a result of Jim Wells County's inadequate training procedures. A local county government will be held liable under § 1983 for a failure to train only if plaintiff shows that "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly cause the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris, et al.*, 109 S.Ct. 1197, 1205-07 (1989)).

Counties are required "to train its police officers to recognize and not ignore *obvious* medical needs of detainees with *known, demonstrable, and serious* mental disorders." *Evans*, 986 F.2d at 107 (quoting *Burns*, 905 F.2d at 104). However, prisoners do not have an absolute right to psychological screening because such training would "require[] the skills of an experienced medical professional with psychiatric training." *Id*.; *Evans*, 986 F.2d at 108-09 (5th Cir. 1993). In other words, "the failure to train custodial officials in screening procedures to detect *latent* suicidal tendencies does not rise to the level of a constitutional violation." *Evans*, 986 F.2d at 108.

In presenting their case, plaintiffs failed to offer any evidence showing that

Johnathon exhibited obvious signs of known, demonstrable, and serious suicidal tendencies.  No witness who came in contact with Johnathon during his stay at Jim Wells County Jail testified that Johnathon exhibited any sign of suicidal tendencies, much less known, demonstrable or serious suicidal tendencies.  In addition, Johnathon himself stated that he had never attempted suicide, he had never had thoughts about committing suicide, and he was was not thinking of killing himself when he was booked into Jim Wells County Jail on November 22, 2003, three days before he hung himself.  Johnathon also never told anyone that he was considering suicide in the following four days.

Jailers Ricardo Mercado and Luis Ozuna and dispatcher John Flores each had some contact with Johnathon while he was being held at Jim Wells County.  Ozuna booked Johnathon on November 22, 2003 and moved him from general population to a separation cell on November 25, 2003.  Mercado escorted Johnathon to the visitation room and spoke with Johnathon while he was in the separation cell.  John Flores spoke with Johnathon over the intercom.  All testified that Johnathon did not exhibit any signs of suicidal tendencies, nor did they observe any signs of or have any knowledge of suicidal tendencies.

Johnathon's own parents, John and Shelly Mascheck, also testified that they did not believe their son was suicidal, nor did they warn any Jim Wells County personnel that he might be.  Shelly Mascheck spoke with her son on the phone on November 24, 2003, and John Mascheck spoke with his son in person during visitation shortly before Johnathon hung himself.  Both parents met with Sheriff Oscar Lopez on that same day.

John Mascheck asked that his son be moved to a cell by himself to protect Johnathon from others, not himself.  Sheriff Lopez complied and instructed Ozuna to move Johnathon to a separation cell.  However, the Maschecks never warned him that Johnathon might be suicidal.

Because Johnathon showed no signs of known, demonstrable, and serious suicidal tendencies, plaintiffs cannot prevail on their § 1983 claims against Jim Wells County.  In other words, plaintiffs have failed to provide legally sufficient evidence of Jim Wells County jailers being deliberately indifferent to Johnathon Mascheck's obviously serious medical needs in violation of Johnathon Mascheck's right as a pretrial detainee to adequate protection from his known suicidal tendencies.

### B.   Negligence Under Texas Tort Claims Act

Under the Texas Tort Claims Act, a governmental unit's immunity is waived "for death caused by a use of tangible personal property."  *San Antonio State Hosp. v. Cowan, et al.*, 128 S.W.3d 244, 245 (Tex. 2004); TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 1985).  Defendant correctly argues that Jonathon's use of a jumpsuit provided to him by the county does not constitute "use" within the meaning of the Act.  It is well established that "a governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more."  *Cowan*, 128 S.W.3d at 246.  Consequently, Jim Wells County's immunity is not waived, and it is not subject to liability under the Texas Tort Claims Act.   Plaintiffs did not oppose defendant's motion on these grounds.

### C.   Negligence Per Se

Plaintiffs also allege negligence per se in their complaint. However, pleading negligence per se alone does not raise a claim under the Texas Tort Claims Act. *City of Mission v. Cantu, et al.*, 89 S.W.3d 795, 807 n.17 (Tex.App.–Corpus Christi 2002). Because plaintiffs failed plead a waiver of immunity, Jim Wells County is not subject to liability for negligence per se. Plaintiffs did not oppose defendant's motion on these grounds.

## II.   CONCLUSION

This Court, having fully heard plaintiffs and considering the evidence presented by plaintiff, finds that plaintiff failed to offer legally sufficient evidence on the necessary elements of their case. Accordingly, defendant's Motion for Judgment as a Matter of Law is GRANTED pursuant to Rule 50(a). Plaintiffs John Mascheck and Shelly Mascheck, individually and as representatives of the estate of Johnathon David Mascheck take nothing. Defendant shall recover court costs.

ORDERED this ____25th____ day of ____July____, 2006.

*Hayden Head*
_____
HAYDEN HEAD
CHIEF JUDGE